**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
CUMBERLAND FARMS, INC.,

                   Plaintiff,

          -against-

LEXICO ENTERPRISES, INC., and
FRANK KESHTGAR

                  Defendants.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-cv-4658 (ADS)(AKT)

**APPEARANCES:**

**Shipman & Goodwin LLP**
*Attorneys for the Plaintiff*
One Constitution Plaza
Hartford, CT  06103
       By:  Paul D. Sanson, Esq.
           Laurie A. Sullivan, Esq., Of Counsel

**Law Offices of Kenneth Geller**
*Attorney for the Defendants*
372 Doughty Boulevard
Inwood, NY  11096
       By:    Kenneth Geller, Esq., Of Counsel

**SPATT, District Judge.**

     This case arises out of a business dispute between the Plaintiff Cumberland

Farms, Inc. ("Cumberland") and the Defendant Lexico Enterprises, Inc. ("Lexico").

In two previous actions in federal district court, Lexico asserted several claims

against Cumberland arising out of a franchise agreement.  All of those claims by

Lexico were ultimately lost.  Cumberland has now brought a separate action to

recover reimbursement of attorney's fees and costs that it incurred in the previous actions and has moved for summary judgment.

## I. BACKGROUND

Except where noted, the following facts are undisputed.

The Plaintiff Cumberland and the Defendant Lexico were parties to a franchise relationship, in which Cumberland leased to Lexico an Exxon-branded gas station and convenience store located at 2030 Sunrise Highway, Merrick, New York 11566 (the "Merrick Exxon Station"). The parties entered into a relevant lease agreement (the "Lease"), effective August 1, 2006 through July 31, 2009. In addition, Lexico also contracted to purchase from Cumberland all of the supplies necessary to operate the station (the "Supply Agreement"), also effective August 1, 2006 through July 31, 2009.

Both the Lease and the Supply Agreement contained assignability clauses. The agreements provided that if Lexico wished to assign its rights under the franchise agreements, it needed to obtain Cumberland's approval. In addition, paragraph 19 of the Lease provided that Lexico "shall reimburse [Cumberland] for all reasonable costs (including all attorneys' fees) that [Cumberland] incurs in enforcing its rights and remedies under this Lease." (Pl. Ex. 1.) Although Lexico and Cumberland do not deny that this provision was contained in the Lease, they do dispute its meaning.

On April 26, 2006, the Defendant Frank Keshtgar, a principal of Lexico, issued to Cumberland a "Continuing Guaranty" (the "Guaranty"), in which Keshtgar "unconditionally guarantee[d] to [Cumberland] the full payment and

2

performance when due of all Indebtedness", which is further defined in paragraph 1 to mean "all debts and other obligations of [Lexico] to [Cumberland] of any kind." (Pl. Ex. 3.)  In addition, as Guarantor, Keshtgar agreed "to pay expenses, including attorney's fees, reasonably incurred by [Cumberland] in efforts to collect or enforce any Indebtedness or this Guaranty."  (Id. at ¶ 6.)  Once again, although Lexico and Cumberland do not deny that this provision was contained in the Guaranty, they do dispute its meaning.

On March 4, 2008, Lexico contracted to sell its leasehold on the Merrick Exxon Station and its rights under the Supply Agreement to a third-party, WorldCo Petroleum NY Corp. ("WorldCo").  However, as stated above, to consummate this transaction, both the Lease and the Supply Agreement required Cumberland to consent to the transfer.  The contracts further provided that this consent was not to be unreasonably withheld.

To assess whether to approve the transfer of the contract rights from Lexico to WorldCo, Cumberland allegedly met with a representative of WorldCo on April 22, 2008.  Lexico asserted that, on that date, Cumberland provisionally withheld its consent to transfer the contract rights, because it found WorldCo's representative had insufficient training to successfully operate the business.  Lexico claimed that Cumberland then reversed its decision two days later, and notified Lexico on April 24, 2008 of its intent to approve the transfer to WorldCo.  However, on April 25, 2008, WorldCo withdrew its purchase offer, allegedly based on its April 22, 2008 meeting with Cumberland.

On June 3, 2008, Lexico filed a lawsuit against Cumberland in the United States District Court for the Eastern District of New York, asserting claims for breach of contract and tortious interference with contract, under Docket No. 08-cv-2221 (the "First Action").

On April 22, 2009, Lexico terminated the Lease and the Supply Agreement pursuant to their terms.  A week later on April 29, 2009, Lexico then filed a second lawsuit against Cumberland, which was before this Court under Docket No. 09-cv-0712 (the "Second Action").  Lexico alleged identical facts to those asserted in the First Action, except that it also alleged that it operated the Merrick Exxon Station without profit from April 22, 2008 to April 22, 2009.  In addition, Lexico asserted the same causes of action as in the First Action, except that it demanded a lesser amount in damages.  Lexico explained that the damages claim in the Second Action did not account for the direct value of the lost sale to WorldCo, but rather reflected other financial losses sustained after Cumberland refused to consent to the sale to WorldCo until the franchise relationship between the parties was mutually terminated.

On February 27, 2010, this Court dismissed the Second Action because the causes of action asserted by Lexico were identical to those asserted in the First Action and thus were duplicative.  The case was closed on March 1, 2010.

On July 26, 2010, a jury trial was commenced in the First Action.  The court determined at the conclusion of the trial that Lexico had not met its burden of proof with respect to tortious interference with the contract and dismissed the claim. The first count for wrongful withholding of consent was sent to the jury for deliberation,

and the jury returned a unanimous verdict in Cumberland's favor — namely, finding that it did not unreasonably withhold consent pursuant to the Lease and Supply Agreements.

On October 12, 2010, Cumberland filed the present action to recover attorneys' fees, costs of suit, and other expenses it incurred to enforce its rights under the franchise agreements — essentially defending the two previous lawsuits brought by Lexico — in the total approximate amount of $344,163.29 (the "Indebtedness"). Cumberland presently asserts two causes of action. First, it alleges liability under the Lease agreement against Lexico, because Lexico has failed to pay any portion of the Indebtedness that Cumberland incurred to enforce its rights under the Lease, specifically "its right to withhold consent to a proposed sale and assignment to a third party when such withholding of consent is reasonable." (Compl. at ¶ 27.) Second, Cumberland alleges liability under the Guaranty against Keshtgar, because in the Guaranty, Kestgar unconditionally guaranteed to be held liable for all unpaid indebtedness of Lexico. (Compl. at ¶ 32.)

## II. DISCUSSION

### A. **Legal Standard for Summary Judgment**

"Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010) (citing Fed. R. Civ. P. 56(c)). The burden of showing

that no genuine factual issue exists rests on the moving party.  See Gallo v.

Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994).

"Interpretation of the terms of a legally binding agreement, such as a

contract, are questions of law and therefore appropriate for summary judgment."

Interactive Motorsports and Entm't Corp. v. Dolphin Direct Equity Partners, LP,

and Race Car Simulation Corp., 419 Fed. App'x 60, 61 (2d Cir. 2011).  Summary

judgment is appropriate if the terms of the contract are unambiguous.  See Topps

Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008) ("a motion for

summary judgment may be granted in a contract dispute only when the contractual

language on which the moving party's case rests is found to be wholly

unambiguous and to convey a definite meaning").  Unless the movant can

demonstrate that the contractual language is not "susceptible of at least two fairly

reasonable meanings" summary judgment will not be granted.  See Schering Corp.

v. Home Ins. Co., 712 F.2d 4, 9 (2d Cir. 1983).  However, summary judgment is

appropriate where the language of the contract is clear on its face, even though one

party proffers a different interpretation of the contract language.  See Harris Trust &

Savings Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1147–48 (2d Cir.

1992), cert. denied, 507 U.S. 986, 113 S. Ct. 1585, 123 L. Ed. 2d 151 (1993).

"To the extent the moving party's case hinges on ambiguous contract

language, summary judgment may be granted only if the ambiguities may be

resolved through extrinsic evidence that is itself capable of only one interpretation,

or where there is no extrinsic evidence that would support a resolution of these

ambiguities in favor of the nonmoving party's case."  Id.

6

**B.  As to Whether Lexico Is Liable Under the Lease Agreement**

Paragraph 19 of the Lease agreement provides that Lexico "shall reimburse [Cumberland] for all reasonable costs (including attorneys' fees) that [Cumberland] incurs in enforcing its rights and remedies under this Lease."  (Pl. Ex. 1.) Cumberland argues that this unambiguous language of the Lease demonstrates that Lexico is obligated to reimburse Cumberland for attorneys' fees and costs incurred in defending the two previous Lexico lawsuits.  In particular, the Plaintiff asserts that "[b]ecause the two Lexico lawsuits challenged Cumberland's rights as specifically set forth in the Lease, and caused Cumberland to incur attorneys' fees and costs to protect and enforce those rights, Cumberland is entitled to reimbursement for those fees and costs from Lexico."  (Pl. Mem. at 5.)

In opposition, the Defendant Lexico argues that based upon the common definitions of the terms "enforce" and "right", Cumberland was not enforcing any of its Lease rights in the prior two suits.  According to Lexico, instead of taking affirmative action to compel obedience or to cause something to happen, Cumberland merely defended when it denied, contested, and opposed the claims and allegations made by Lexico.

The Court agrees with the Plaintiff and finds that the unambiguous language of the agreement evinces a clear intent to indemnify Cumberland's costs relating to claims arising from the Lease agreement in which Cumberland enforces its rights and remedies.  This enforcement includes the First and Second Actions, as both actions concerned Cumberland's "right" to reasonably withhold consent to a proposed sale and assignment of the franchise.  The Court finds that Lexico's

interpretation of the Lease is unpersuasive.  Its starting premise is that one can only enforce its rights by acting in the role of a plaintiff in civil litigation, rather than as a defendant.  However, that is plainly not the case.  First, the unambiguous language provides that the "Lessee shall reimburse Lessor for all reasonable costs . . . that Lessor incurs in enforcing its rights and remedies under this Lease."  The plain terms do not distinguish between a plaintiff and a defendant.  It thus allows the Lessor to seek reimbursement regardless of whether it is a plaintiff or defendant, and would allow it to recover fees as a result of the previous actions.

More importantly, the language "enforcing its rights and remedies" is not confined solely to affirmative actions of a plaintiff.  Rather, even by acting as a defendant against Lexico's meritless claims, Cumberland was enforcing its contractual rights.  See Loss Prevention Works, LLC v. March Networks, Inc., No. 10 Civ. 7616,  2011 WL 5838445, at *4 (S.D.N.Y. Nov. 21, 2011) ("By defending against LPW's meritless claims, MNI incurred "fees and costs" during an action brought to enforce contractual rights.").  "New York courts routinely award prevailing defendants fees and costs in such circumstances."  Id.  See, e.g., Tudisco v. Duerr, 89 A.D.3d 1372, 933 N.Y.S.2d 140 (4th Dep't 2011) ("Here, pursuant to the promissory note, defendants are entitled to attorneys' fees related to claims or counterclaims to enforce their rights under the note."); Residential Holdings III LLC v. Archstone–Smith Operating Trust, 83 A.D.3d 462, 468, 920 N.Y.S.2d 349 (1st Dep't 2011) (defendants as the prevailing party were entitled to fees and costs in an action brought to enforce a contract); Kessel Brent Corp. v. Benderson Prop. Dev., Inc., 68 A.D.3d 1709, 1709, 893 N.Y.S.2d 401 (4th Dep't 2009) (same).  See

also Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 525 (2d Cir. 1990) ("Further, the fact that Towers commenced suit first would not remove Cadillac's cost of defending that action from the category of "costs of collection"; Towers cannot avoid its contractual responsibilities simply by making a meritless preemptive strike.").

Finally, the reimbursement clause at issue is similar to a prevailing party provision, because it essentially "provides that if either of the parties to the contract brings an action to enforce its terms, the non-prevailing party must pay the prevailing party's fees and costs."  Loss Prevention Works, 2011 WL 5838445, at *4.  Such a provision as a general matter gives no weight to whether the prevailing party is a plaintiff or defendant.  Of course, the provision at issue does not expressly state that Cumberland needs to be a prevailing party in order to be reimbursed.  However, the Court would not find that the Cumberland was enforcing its rights and remedies if it had not prevailed in the previous actions.  In other words, if Cumberland's claims had been defeated in the previous actions by Lexico, then that necessarily means that it was not Cumberland's right to enforce the legal fees and costs provision in the first instance.  The sole difference between a typical prevailing party provision and the reimbursement provision at issue is that in this case, it is only applicable if the Lessor, Cumberland, is the prevailing party, which for these purposes is irrelevant because it is undisputed that Cumberland was the successful party.

In sum, the language of the contract is clear on its face that Cumberland is entitled to the fees and costs it seeks pursuant to the reimbursement provision.  The

Court agrees with the Plaintiff that the result should not differ based upon whether Cumberland was a plaintiff or defendant, because "the two suits would both involve the same issue (whether Cumberland properly exercised its right to reasonably withhold consent), and Cumberland would be seeking the same remedy (an order enforcing that right)."  (Pl. Reply at 2.)

Therefore, the Court finds that Cumberland is entitled to be reimbursed for its costs, including attorney's fees, that were incurred as a result of the two prior actions relating to the Lease agreement.

## C.  As to Whether Keshtgar is Liable Under the Guaranty Agreement

The Guaranty agreement entered into by Lexico's principal, Frank Keshtgar, states that he "unconditionally guarantees to [Cumberland] the full payment and performance when due of all Indebtedness", and further states that he "agrees to pay expenses, including attorney's fees, reasonably incurred by [Cumberland] in efforts to collect or enforce any Indebtedness or this Guaranty."  (Pl. Ex. 3.)  Unlike the Lease agreement, which the parties appear to agree is governed by New York law, the Guaranty agreement is expressly governed by Massachusetts law.  Thus, the Court does not consider the case precedent utilized by the Plaintiff in its motion with regard to the Guaranty to the extent that it is governed by New York law.

Under Massachusetts law, instruments of guaranty, like other contracts, are enforceable in accordance with their terms.  Shawmut Bank v. Wayman, 606 N.E.2d 925, 927, 34 Mass. App. Ct. 20, 23 (Mass. App. Ct. 1993).  "The liability of the defendants as guarantors is to be ascertained from the terms of the written contract construed according to the usual rules of interpretation read in connection

with the subject matter, the relations of the parties to the transaction, and the well understood usages of business." Schneider v. Armour & Co., 80 N.E.2d 34, 36, 323 Mass. 28, 30 (Mass. 1948). Moreover, a guaranty that is absolute and unconditional is one that requires no condition precedent to its enforcement against the guarantor other than the mere default by the principal obligor. See Shawmut Bank, 34 Mass. App. Ct. at 23; Provident Co-op Bank v. James Talcott, Inc., 260 N.E.2d 903, 910, 358 Mass. 180, 192-93 (Mass. 1970).

Here, the Guaranty that Keshtgar signed was unconditional because the agreement expressly used the term "unconditionally." In addition, the plain and unambiguous terms of the Guaranty provide that Keshtgar guarantees to Cumberland the full payment and performance when due of all Indebtedness. Lexico even appears to concede that if Cumberland is entitled to costs as a result of the prior lawsuits, then Keshtgar would be obligated under the Guaranty. (See Def. Opp. at 4) (presenting no argument with regard to Keshtgar other than that "[s]ince [Cumberland] is not entitled to costs it incurred in defending the Lexico-[Cumberland] suits, Keshtgar is not obligated under the Guaranty").

Thus, the Court agrees with the Plaintiff that, as a matter of law, Keshtgar is liable as a guarantor to reimburse Cumberland for attorney's fees and costs incurred during the previous Lexico suits.

However, the Plaintiff Cumberland still must demonstrate that the principal obligor, Lexico, has defaulted, before it may seek collection from Keshtgar as a guarantor. Cumberland acknowledges that it cannot seek a dual recovery and that

Keshtgar is only liable to the extent that Lexico does not pay the full amount of the attorneys' fees and costs.

While as of this time Lexico has failed to pay the fees Cumberland alleges it is owed, the Court finds that it must be given an opportunity to do so in light of this Memorandum of Decision and Order, prior to finding that Lexico has defaulted. Therefore, the Court finds that if, and only if, Lexico does not pay the full amount awarded by the final judgment in this case, then Keshtgar is liable for that amount.

**D.  As to Whether a Claim for Attorneys' Fees and Costs Should Have Been Brought in the Previous Suits as Compulsory Counterclaims**

The Defendant Lexico argues that summary judgment is inappropriate in the present case because under Rule 13, Cumberland's failure to seek its costs in the previous actions requires that this suit be dismissed.

Federal Rule of Civil Procedure 13(a) requires, with certain exceptions not relevant here, that a litigant "state as a counterclaim any claim . . . if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  In the Second Circuit, a claim is compulsory if "a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000) (internal quotation marks omitted); see Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) ("this Circuit has long considered this standard met when there is a 'logical relationship' between the counterclaim and the main claim").

Courts consider the following factors when deciding whether a counterclaim is compulsory: "(1) identity of facts between the original claim and counterclaim; (2) mutuality of proof; (3) logical relationship between original claim and counterclaim." Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg v. Noto, 94 F.R.D. 184, 187 (E.D.N.Y. 1982) (quoting Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 811-12 (2d Cir. 1979)). "Although these factors or tests may be indicative in one sense or another of the compulsory character of a counterclaim, no one of them is conclusive, and should not be relied upon exclusively." Id. "If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit." Id.

Thus, the relevant determination is whether Cumberland's present suit for reimbursement of fees and costs is "so logically connected" to the previous suits regarding breach of the assignability provision of the Lease agreement, that it arises out of the same transaction or occurrence as the First or Second Action. This Court has not uncovered any case law in this circuit directly addressing the issue of whether a claim for reimbursement of attorney's fees and costs pursuant to a contract provision is a compulsory counterclaim under Rule 13 in a suit for breach of another provision of that contract.

Cases with somewhat analogous facts have made determinations under Rule 13 upon consideration of varying factors. See, e.g., Capital Asset Research Corp. v. Finnegan, 216 F.3d 1268, 1279 (11th Cir. 2000) ("nothing in the language of the Rule [13] itself or in the Advisory Committee notes suggests that the failure to seek attorneys' fees in a pleading is a defect depriving the district court of subject matter

jurisdiction."); Breton, LLC v. The Lincoln National Life Ins. Co., No. 10 Civ.

1309, 2011 WL 3678148, at *17 (E.D. Va. Aug. 19, 2011) (finding that a defendant

had no obligation under Rule 13 to assert its entitlement to attorney's fees as a

counterclaim in an earlier litigation because although arguably some "logical

relationship" existed, the cases involved interpretation of different documents and

different evidence); Sokoloff v. Gen. Nutrition Companies, Inc., No. 00 Civ. 641,

2001 WL 536072, at *8 (D. N.J. May 21, 2001) ("New Jersey's Entire Controversy

Doctrine does not bar defendants from filing a separate action in a court of

competent jurisdiction for the recovery of fees under the Franchise Agreement

because the defendants could not assert they were the 'prevailing parties' until the

first case was resolved and because they did everything procedurally possible to

preserve their right to seek fees"); First African Trust Bank, Ltd. v. Bankers Trust

Co., No. 94 Civ. 4995, 1995 WL 422269, at *2 (S.D.N.Y. July 14, 1995) ("FATB's

second objection, that Bankers Trust waived its right to attorney fees by failing to

file a compulsory counterclaim in the prior litigation, is also meritless.  Although

Bankers Trust was sued in the Southern District by FATB in name, FATB itself was

not a party. Thus, it cannot be said that FATB itself appeared in that action.");

Bellevue v. Kafka, No. 92 Civ. 4589, 1994 WL 127213 at *2-3 (N.D. Ill. Apr. 7,

1994) ("Because the plaintiffs' claim for attorneys' fees was premature until after

the original suit was adjudicated, it cannot be a compulsory counterclaim."); In re

Watkins, 298 B.R. 342, 350 n.2 (Bkrtcy. N.D. Ill. 2003) ("Even if Illinois were a

compulsory-counterclaim jurisdiction, GMAC's subsequent claim for attorney' fees

would not necessarily be barred as result of Watkins' breach-of-contract claim . . .

in the original lawsuit, because the former did not necessarily arise out of the same nucleus of operative facts as the latter.").

"The crucial element in determining whether a newly asserted claim is based on the same cause of action as a previously decided claim is "the factual predicate of the several claims asserted."  Bin Saud v. Bank of New York, 734 F. Supp. 628, 633 (S.D.N.Y. 1990).  "For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." Expert Electric Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir.), cert. denied, 434 U.S. 903, 98 S. Ct. 300, 54 L. Ed. 2d 190 (1977).

Here, the Court finds that although the present case is logically related to the First and Second Actions in that it arises in part from the same underlying contract and is seeking reimbursement for fees and costs incurred in those previous actions, it is not sufficiently related so as to constitute a compulsory counterclaim under Rule 13.  First, other than the actual Lease agreement, there is no identity of facts between the original claim and the present action.  The First and Second Actions primarily concerned facts revolving around Lexico's contract to sell its leasehold on the Merrick Exxon Station and its rights under the Supply Agreement to third-party WorldCo, and whether Cumberland unreasonably withheld its consent to transfer the contract rights.  These facts are basically not relevant to the present action, because anything to do with the Merrick Exon Station or WorldCo is essentially immaterial.  Instead, the relevant facts in this case mainly concern different language in the Lease agreement and whether Kushtgar, as principal of Lexico, personally guaranteed any indebtedness to Cumberland via a Guaranty agreement.

Moreover, there is no mutuality of proof between the First and Second Action and this Action.  Of course, the Lease agreement itself is a vital component of all of the actions.  But that is where any mutuality ceases.

This case is unlike attorney malpractice suits, relied upon by the Defendant, where courts have almost unanimously held that causes of action for attorneys' fees are compulsory counterclaims.  See D'Jamoos v. Griffith, 368 F. Supp. 2d 200, 204 (E.D.N.Y. 2005) ("courts hold that legal malpractice claims and counterclaims for legal fees arising from that litigation are 'logically related'"); Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd., 111 F.R.D. 359, 361 (D.D.C. 1986) ("Under this standard, it is hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought.").  The distinction is that in an attorney malpractice suit, "[t]he party raising the malpractice claim is in effect asserting a defense of failure to perform to the lawyer's claim for breach of contract."  Id.  Here, Lexico's previous claims can in no way be considered a defense of failure to perform to Cumberland's claim for the collection of fees, because logically Cumberland's claims under the reimbursement provision could not arise until Lexico first brought its suit.

Accordingly, the present case is more akin to that of indemnification. "Indemnity provisions by definition . . . require reimbursement for losses and liabilities that the indemnitee has actually incurred."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 179 (2d Cir. 2005) ("The contract provision requiring defendant to pay attorney's fees is by its plain terms an

indemnity provision."). <u>See In Re Jacom Computer Servs., Inc.</u>, 280 B.R. 570, 572 (Bkrtcy. S.D.N.Y. 2002) ("Reimbursement by definition includes indemnification, and indemnification naturally includes recovery of attorneys' fees.").

The Second Circuit has addressed the issue of when a separate suit may be brought for indemnification of fees and costs subsequent to the initial dispute, although the case was associated with an earlier arbitration proceeding and not a federal action.  Nevertheless, the court agreed with the general proposition that the indemnification claims were not based upon the same transaction as the earlier breach of contract claims because the indemnification claims arose out of the entry of the award and the costs and expenses of the previous proceedings.  <u>Pike v. Freeman</u>, 266 F.3d 78, 92 (2d Cir. 2001).  Thus, although the present case was brought after another federal action as opposed to an arbitration proceeding, the reasoning of <u>Pike</u> applies here; namely, Lexico's previous breach of contract claims were based upon the parties' conduct prior to the institution of the First Action, and Cumberland's claims for reimbursement did not arise until its rights were established and enforced with the outcome of the jury's verdict.

Lexico argues that Cumberland could have brought its claims in the prior proceedings, presumably as counterclaims in both the First and Second Actions, even if the certainty and amount of any award under the reimbursement provision and Guaranty agreement was hypothetical.  The Court agrees that Cumberland may have done so.  It is clear from the plain language of the Lease that Cumberland was aware of its rights to reimbursement and knew of its potential claim in this regard. However, the fact that this possibility existed is subject to the real probability that

the court may have found it to be premature to raise such a counterclaim.  See

4Kids Entm't, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 249-250 (S.D.N.Y.

2011) (Plaintiffs' request for attorneys' fees relating to the Huntik Term Sheet is

denied  as premature, since the issues relating to their claim for breach of contract

are not yet fully adjudicated.").

Moreover, the crucial distinction is that Cumberland was not mandated to

bring a counterclaim, for "we have uncovered no authority requiring a party to

obtain a conditional judgment for the purpose of avoiding the preclusive effect of

res judicata." Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 440 (2d Cir.

2000).  "The question is not whether the applicable procedural rules permitted

assertion of the claim in the first proceeding; rather, the question is whether the

claim was sufficiently related to the claims that were asserted in the first proceeding

that it should have been asserted in that proceeding."  Pike, 266 F.3d at 91.

No one disputes that Cumberland could have made this claim sooner, and

perhaps as a permissive counterclaim.   However, the Court finds that the claims

asserted in the present action were not compulsory counterclaims in the previous

actions, so that they may now be asserted.  See Port v. Stockton v. Western Bulk

Carrier KS, 371 F.3d 1119, 1120 (9th Cir. 2004) ("Each party has assumed that

some form of initial pleading—either a complaint or a counterclaim—is the

appropriate manner by which the Port should seek its costs.  Yet, such is not

generally the case in our federal system.").  There is no authority "to support [the]

theory that every pre-existing contractual right relating, however tangentially, to a

lawsuit is somehow "waived" under Rule 13 unless the right is asserted in the lawsuit.  Breton, 2011 WL 3678148, at *17.

Therefore, the Court finds that Cumberland is not now precluded under Rule 13 from bringing an action for reimbursement after a previous action on the primary liability has been taken to judgment.

**E.   As to Whether Attorney's Fees and Costs Should Have Been Requested Pursuant to Rule 54(d)**

Lexico also asserts that Cumberland should not be permitted to pursue this action for reimbursement of fees and costs under the Lease agreement because it was required to move for attorney's fees and court costs within 14 days of the initial judgment, pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i) ("Rule 54(d)").  "Rule 54 governs a case where attorneys' fees are ancillary relief for which a party must make a [post-judgment] motion to the court in order to recover." Hanley v. Herrill Bowling Corp., No. 94 Civ. 4611, 1996 WL 79324, at *2 (S.D.N.Y. Feb. 23, 1996).  However, "[c]laims for attorneys' fees . . . [may] be made by motion unless the substantive law governing the action [i.e. contract law] provides for the recovery of such fees as an element of damages to be proved at trial." Jones v. UNUM Life Ins. Co., 223 F.3d 130, 137 (2d Cir. 2000) (emphasis added); Port of Stockton, 371 F.3d at 1121 ("So unless this case falls under Rule 54's 'substantive law' exception, the Port need not, nor should it, have filed a counterclaim or a complaint at all.").  Thus, Paragraph (2) of Rule 54(d) "does not . . . apply to fees recoverable as an element of damages, as when sought under the

terms of a contract . . ." <u>Notes of Advisory Committee on Rules, 1993 Amendment</u>, Fed. R. Civ. P. 54(d)(2)(A).

If Cumberland had moved in the First Action for a counterclaim in order to recover its attorney's fees and costs, there is no doubt that Rule 54(d) would not be applicable. <u>See Town of Poughkeepsie v. Epsie</u>, 221 Fed App'x 61, 62 (2d Cir. 2007) ("The plain text of Rule 54(d) and the Advisory Committee Notes to the 1993 Amendments clearly indicate that the recovery of attorney's fees that must be submitted to the jury as an element of damages in a counterclaim cannot be awarded merely on the basis of the adjudication of a [Rule 54(d)] post-judgment motion."). The Court's finding that Cumberland was not required to bring a compulsory counterclaim in the First Action, but may instead choose to bring a separate action to recover its fees, does not alter the conclusion that Rule 54(d) is inapplicable. In either situation, Cumberland's recovery of attorney's fees and costs would be contractual and thus can only be recovered as an element of damages to be proved at trial, whether in the First Action or in the present suit.

Therefore, Rule 54(d) is not applicable and is not a basis upon which deny the Plaintiff's motion for summary judgment. <u>See Town of Poughkeepsie</u>, 221 Fed App'x at 62 ("Because the district court properly identified that the Espies' only ground for the recovery of attorney's fees was contractual, it was not error to deny this application as inconsistent with the provisions of Rule 54(d), and accordingly the district court's decision not to award fees was not an abuse of discretion."); <u>Hanley</u>, 1996 WL 79324, at *2 ("Thus, attorneys' fees were

recoverable pursuant to "the terms of a contract" to which Rule 54 (d)(2)(B) does not apply.").

The Defendants cite to <u>Port of Stockton</u>, 371 F.3d at 1121, in which the Ninth Circuit found that under California law, Rule 54's exception did <u>not</u> apply to the contractual attorney's fees provision at issue. However, the Court explained that under California law, contractual attorneys' fees shall be fixed by the court, and thus are an element of the costs of the suit and not an element of damages to be proved at trial. In contrast, under New York law, contractual attorneys' fees are ordinarily recoverable as an element of damages. <u>See Camatron Sewing Mach., Inc. v. F.M. Ring Assocs., Inc.</u>, 179 A.D.3d 165, 169, 582 N.Y.S.2d 396 (1st Dep't 1992) ("Absent some contractual or statutory right thereto, attorneys' fees and litigation costs are not ordinarily recoverable as an element of damages."); <u>Rosano's Farm Store, Inc. v. Intl. Collection Serv., Inc.</u>, 115 A.D.2d 195, 495 N.Y.S.2d 264 (3rd Dep't 1985) ("Absent an express contractual obligation or specific statutory authority, counsel fees are not a recoverable item of damages."). "[F]or a party to recover attorneys' fees as an element of damages, the contract must evidence an 'unmistakably clear' intent for those fees to constitute damages in the event of breach." <u>Sidley Holding Corp. v. Ruderman</u>, No. 08 Civ. 2513, 2009 WL 6047187, at *16 (S.D.N.Y. Dec. 30, 2009) (quoting <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 20-21 (2d Cir. 1996)); <u>see Hooper Assocs. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). In this case, the contract provides for reimbursement of all

reasonable costs (including all attorneys' fees) to enforce contractual rights and thus, demonstrates such an unmistakably clear intent.

Accordingly, the Court will not deny the Plaintiff's claim for reimbursement on the ground that it should have been brought as a Rule 54(d) motion, and thus summary judgment for the Plaintiff is appropriately granted.

**F.   As to the Amount of Fees**

Cumberland has not provided this Court with any material with which to calculate the amount of fees it alleges it is owed pursuant to the Lease and Guaranty agreements.  Both the amount of fees and costs due under the Lease and the amount of fees and costs owed under the Guaranty are issues that are properly determined separate and apart from issues of liability.  See Gen. Trading Co. v. A & D Food Corp., 292 A.D .2d 266, 267, 738 N.Y.S.2d 845, 846 (1st Dep't 2002) ("Whether defendants are liable upon their guarantee is an issue which may be resolved apart from and in advance of any determination as to whether the sale of the collateral was conducted in commercially reasonable fashion.").  As such, the Plaintiff is directed to provide the Court with such information within ten days of the date of this Memorandum of Decision and Order.  The Defendant will then have ten days in which to object to the Plaintiff's calculation of fees and costs, if it wishes to do so.

However, the Court notes that Cumberland will only be entitled to fees incurred as a result of defending the First Action and the Second Action.  The Plaintiff is not entitled to any fees incurred as a result of bringing the current action. As explained above, the Court finds that Cumberland did have the opportunity to bring such a claim as a counterclaim in the other two actions.  Therefore,

Cumberland should not be entitled to additional costs in bringing the present suit as it chose to proceed in this manner.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** that the Plaintiff is directed to provide the Court with a calculation of its requested fees and costs within ten days of the date of this Memorandum of Decision and Order.  Thereafter, the Defendant will have ten days in which to object to the Plaintiff's calculation.

**SO ORDERED.**

Dated: Central Islip, New York
February 16, 2012

                                 */s/ Arthur D. Spatt*
                                 ARTHUR D. SPATT
                        United States District Judge